**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**(LEXINGTON DIVISION)**

Eastern District of Kentucky
**FILED**

DOUGLAS A. WAIN, ET AL.          )

    Plaintiffs,          )

vs.          )

KIMBERLY N. BUNNELL, ET AL.          )

    Defendants.          )

MAY 08 2025

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

) **Civil Action No. 5:24-cv-00305-GFVT**

** ** ** ** **

## PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF AUTHORITIES

## CASES

*ABA Model Rules of Prof'l Conduct* R. 1.9 cmt. 3 ............................................................. 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 2

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ................................................... 10

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) .................................... 9

*Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio*, 900 F.2d 882 (6th Cir. 1990) ........................................................................................................................................ 3

*EJS Properties, LLC v. City of Toledo*, 698 F.3d 845 (6th Cir. 2012) ................................ 7

*Ex parte Young*, 209 U.S. 123 (1908) .................................................................................. 8

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ...................... 4

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................. 11, 13

*Forrester v. White*, 484 U.S. 219 (1988) ........................................................... 9

*Gibson v. Berryhill*, 411 U.S. 564 (1973) ......................................................... 6

*Hafer v. Melo*, 502 U.S. 21 (1991) ................................................................... 8

*In re Murchison*, 349 U.S. 133 (1955) .............................................................. 7

*King v. Love*, 766 F.2d 962 (6th Cir. 1985) ...................................................... 9

*Koch v. Koch Indus.*, 798 F. Supp. 1525 (D. Kan. 1992) .................................... 12

*Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301 (6th Cir.

2010) ..................................................................................................................... 5

*Lance v. Dennis*, 546 U.S. 459 (2006) .............................................................. 4

*McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006) .................................... 3

*Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978) ..................... 14

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) .... 5

*Morse v. McWhorter*, 290 F.3d 795 (6th Cir. 2002) ........................................... 13

*Pulliam v. Allen*, 466 U.S. 522 (1984) .......................................................... 8, 9, 12

*Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980) .............................................. 9

*Skinner v. Switzer*, 562 U.S. 521 (2011) ......................................................... 5

*Spencer v. Kemna*, 523 U.S. 1 (1998) ............................................................. 14

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) ............................... 5

*Stump v. Sparkman*, 435 U.S. 349 (1978) ........................................................................ 8

*Tumey v. Ohio*, 273 U.S. 510 (1927) .............................................................................. 7

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) .............................................. 7, 10

*Withrow v. Larkin*, 421 U.S. 35 (1975) .......................................................................... 7

## STATUTES

42 U.S.C. § 1983 ............................................................................................................ 12

## RULES

Fed. R. Civ. P. 4 ............................................................................................................. 13

Fed. R. Civ. P. 12(b)(5) ................................................................................................. 13

Fed. R. Civ. P. 15(a)(2) ................................................................................................. 11

Kentucky Rules of Civil Procedure 69.02 ..................................................................... 10

Kentucky Supreme Court Rule 3.130(1.9) ....................................................................... 3

The Plaintiffs, Douglas A. Wain, and Elisa Wain, pursuant to the Federal Rules of Civil Procedure, respectfully submit this PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS.

## I.   INTRODUCTION

Plaintiffs respectfully oppose Defendants' Motion to Dismiss. As demonstrated below, this Court has proper subject matter jurisdiction over Plaintiffs' civil rights claims, Defendants are not shielded by absolute immunity for the specific conduct alleged, and the Complaint, which Plaintiffs seek leave to amend, states viable constitutional claims.

For these reasons, Defendants' Motion should be denied.

## II.   LEGAL STANDARD

In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The question is not whether the plaintiff will ultimately prevail, but whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## III.   ARGUMENT

### A. Defendants' Motion to Dismiss Should Be Disallowed Due to Counsel's Conflict of Interest

Plaintiffs ask this Court to disallow Defendants' Motion to Dismiss filed on April 4, 2025, on the grounds of conflict of interest between the Defendants' attorney, Dentons Bingham Greenbaum LLP, and the Plaintiffs. The Plaintiffs have worked with Dentons Bingham Greenbaum LLP on several occasions specifically regarding this case since 2019, as evidenced by the emails attached as Exhibit 3. Plaintiffs cannot provide all correspondence, which is considerable, because it would violate attorney-client privilege. The firm has stated they will hold the Plaintiffs' file for seven years, which means they will retain these files until 2026.

Under Kentucky Supreme Court Rule 3.130(1.9), "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same

or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." The emails in Exhibit 3 demonstrate that Dentons previously consulted with Plaintiffs on matters directly related to the foreclosure action at issue in this case. This prior representation creates a clear conflict under Rule 1.9, as the firm now represents parties with interests directly adverse to Plaintiffs.

The conflict of interest presented by Dentons Bingham Greenbaum LLP's representation of Defendants is not merely technical but substantive. Under Rule 1.9 of the Kentucky Rules of Professional Conduct, a lawyer who has formerly represented a client shall not represent another person in "the same or a substantially related matter" when that person's interests are "materially adverse" to the former client's interests.

Courts have interpreted "substantially related" to include matters where there is a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." See *ABA Model Rules of Prof'l Conduct* R. 1.9 cmt. 3; see also *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992).

The Court has authority to disqualify counsel in cases of conflict of interest. See *Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio*, 900 F.2d 882, 888 (6th Cir. 1990) (recognizing courts' inherent power to disqualify counsel). Disqualification is particularly appropriate here where the firm possesses confidential information about

Plaintiffs that could be used to Plaintiffs' disadvantage in this litigation. The Court should disallow Defendants' Motion to Dismiss and require that Defendants obtain unconflicted counsel.

## B. Clarification Regarding the Nature of Plaintiffs' Claims

Plaintiffs seek to clarify that they are not asking this Court to overturn or invalidate any state court judgment in the Foreclosure Action. Rather, Plaintiffs seek redress for independent constitutional violations committed by Defendants during the course of those proceedings. This crucial distinction places Plaintiffs' claims outside the scope of the Rooker-Feldman doctrine.

As the Supreme Court emphasized in *Exxon Mobil*, the Rooker-Feldman doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments." 544 U.S. at 284 (emphasis added). Here, Plaintiffs' injuries stem not from the judgments themselves but from the constitutional violations that occurred during the proceedings.

The Sixth Circuit has recognized this distinction, holding that "the pertinent inquiry... is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). In this case, the source of Plaintiffs' injuries is not the state court judgment but the independent constitutional violations committed by Defendants.

## C. This Court Has Subject Matter Jurisdiction Over Plaintiffs' Constitutional

**Claims**

### 1. The Rooker-Feldman Doctrine Does Not Bar Plaintiffs' Claims

Contrary to Defendants' assertion, the Rooker-Feldman doctrine does not deprive this Court of jurisdiction. The Supreme Court has substantially narrowed this doctrine, limiting its application to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

Plaintiffs do not seek review or rejection of the state court judgment itself. Rather, Plaintiffs seek redress for independent violations of constitutional rights committed by Defendants in their handling of the Foreclosure Action. The source of Plaintiffs' injury is not the state court judgment per se, but the unconstitutional conduct of Defendants throughout the proceedings, including bias, procedural irregularities, and denial of due process.

As the Supreme Court clarified in *Lance v. Dennis*, 546 U.S. 459, 466 (2006), "Rooker-Feldman is not simply preclusion by another name." The doctrine applies only in the "limited circumstances" where a plaintiff explicitly seeks reversal of a state court decision. *Id.* Plaintiffs here seek damages for constitutional violations and prospective injunctive relief to prevent ongoing violations—remedies that would not require invalidation of the underlying state court judgment.

The Supreme Court has continued to emphasize the narrow scope of Rooker-Feldman in its recent decisions. In *Skinner v. Switzer*, 562 U.S. 521, 532 (2011), the Court clarified that if a plaintiff "presents an independent claim" that was not the subject of a prior state-court judgment, then "there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." This case presents such independent claims based on constitutional violations that occurred during, but are separate from, the state court judgment itself.

The defendants argue that Plaintiffs' claims are "inextricably intertwined" with state court judgments. However, the Sixth Circuit has clarified that the "inextricably intertwined" analysis only applies after a determination that the plaintiff is complaining of an injury caused by a state court judgment. *Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301, 309-10 (6th Cir. 2010). Since Plaintiffs' injuries stem from the Defendants' unconstitutional conduct, not from the state court judgment itself, the "inextricably intertwined" analysis is inapplicable.

## 2. Younger Abstention Is Inappropriate Given The Extraordinary Circumstances

Younger abstention is an "exceptional" doctrine that should be applied sparingly. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). While the Foreclosure Action is ongoing, extraordinary circumstances warrant federal intervention in this case.

The Supreme Court has recognized that Younger abstention is inappropriate in cases involving bad faith, harassment, or other exceptional circumstances. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982). Judicial bias constitutes such an extraordinary circumstance. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (recognizing that bias can make state proceedings inadequate for Younger purposes).

Plaintiffs have alleged specific instances of bias and procedural irregularities that render the state proceedings inadequate to protect their federal rights:

    a) Judge Bunnell's demonstrable conflict of interest due to her financial relationships with Central Bank, as detailed in Plaintiffs' submission to the Judicial Conduct Commission shown in the Plaintiffs earlier filing.

    b) Judge Bunnell's pattern of ruling against Plaintiffs without addressing their legal arguments, as demonstrated in the transcripts referenced in Exhibits 5 and 7.

These extraordinary circumstances of bias and misconduct render the state proceedings inadequate to protect Plaintiffs' constitutional rights. The state appellate process focuses primarily on the merits of the Foreclosure Action rather than the constitutional violations alleged here. Where constitutional violations of this nature are alleged, federal court intervention is appropriate despite ongoing state proceedings.

## D. Defendants Are Not Shielded By Absolute Immunity

### 1. Eleventh Amendment Immunity Does Not Bar Claims For Prospective Relief

While the Eleventh Amendment generally bars suits against state officials in their official capacity, this prohibition does not extend to claims for prospective injunctive relief to prevent ongoing violations of federal law. *Ex parte Young*, 209 U.S. 123 (1908).

Plaintiffs seek injunctive relief to prevent future constitutional violations in the ongoing Foreclosure Action. This type of forward-looking relief falls squarely within the *Ex parte Young* exception to Eleventh Amendment immunity.

Defendants incorrectly characterize Plaintiffs' claims as seeking only retroactive relief. While Plaintiffs do seek damages for past constitutional violations, they also seek prospective injunctive relief to prevent future constitutional violations in the ongoing Foreclosure Action. The Supreme Court has made clear that the *Ex parte Young* exception permits suits against state officials, including judges, for prospective injunctive relief to prevent ongoing violations of federal law. See *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) (holding that judicial immunity does not bar prospective injunctive relief against judicial officers acting in their judicial capacity).

The Foreclosure Action remains ongoing, with several appeals and post-judgment proceedings still pending. Plaintiffs seek to prevent future constitutional violations in these proceedings, such as:

    a) Preventing future biased rulings in the pending appeals (Appeal I,

        Appeal V, and Petition III);

    b) Ensuring due process protections when the bankruptcy stay is lifted.

This forward-looking relief falls squarely within the *Ex parte Young* exception to Eleventh Amendment immunity.

The *Ex parte Young* exception is particularly appropriate in this case because the constitutional violations are ongoing and continuing to cause harm to Plaintiffs. Multiple aspects of the Foreclosure Action remain active despite the bankruptcy stay, including Appeal I, Appeal V, and Petition III. Judge Bunnell continues to exercise jurisdiction over these matters and, absent intervention from this Court, will continue to deprive Plaintiffs of their constitutional rights.

The Supreme Court's decision in *Pulliam v. Allen*, 466 U.S. 522 (1984), expressly recognizes that judicial immunity does not bar claims for injunctive relief against judicial officers. While Congress later limited this holding through the Federal Courts Improvement Act of 1996, injunctive relief remains available in cases where "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Here, declaratory relief alone would be inadequate to prevent ongoing constitutional violations, making injunctive relief appropriate and necessary. Moreover, Plaintiffs seek leave to amend their Complaint to name Defendants in their individual capacities as well, which would permit claims for monetary damages to proceed. *Hafer v.*

*Melo*, 502 U.S. 21, 31 (1991) (state officials sued in their individual capacities are "persons" under § 1983 and are not absolutely immune from personal liability under the Eleventh Amendment).

### 2. Judicial Immunity Does Not Provide Absolute Protection For All Challenged Actions

While judges enjoy broad immunity for their judicial acts, this immunity is not limitless. Judicial immunity does not extend to actions taken in "clear absence of all jurisdiction" or to non-judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Plaintiffs contend that certain actions by Defendants went beyond proper judicial functions or were taken without colorable jurisdiction. For example, Judge Caldwell's recusal (as evidenced in Exhibit 4) demonstrates recognition of impropriety. While judges enjoy broad immunity for their judicial acts, this immunity has clear limitations. As the Supreme Court explained in *Forrester v. White*, 484 U.S. 219, 227-28 (1988), judicial immunity is determined by "the nature of the function performed, not the identity of the actor who performed it." Actions that are administrative rather than judicial in nature—such as ex parte meetings with litigants outside of court proceedings—are not protected by judicial immunity.

Furthermore, the Sixth Circuit has recognized that judicial immunity does not extend to actions taken in the "clear absence of all jurisdiction." *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985). Where a judge continues to preside over a case despite clear

conflicts of interest that require recusal under state law, the judge acts without jurisdiction and judicial immunity does not apply. See also *Rankin v. Howard*, 633 F.2d 844, 849 (9th Cir. 1980).

The following specific actions fall outside the scope of absolute judicial immunity:

a) Judge Bunnell's failure to disclose conflicts of interest and refusal to recuse despite clear grounds for disqualification, which constitutes an action in "clear absence of jurisdiction" (see *Rankin v. Howard*, 633 F.2d 844, 849 (9th Cir. 1980), holding that a judge's decision to proceed in the face of a known disqualification is an act in the "clear absence of all jurisdiction");

b) Judge Caldwell's procedural violations in handling the Petition III emergency motion, which demonstrate actions taken outside established procedural rules.

Moreover, judicial immunity does not bar claims for injunctive relief in actions brought under § 1983. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). Plaintiffs seek injunctive relief to prevent ongoing constitutional violations, which is expressly permitted even against judicial officers.

**E. Plaintiffs State Valid Constitutional Claims That Should Not Be Dismissed**

**1. The Complaint States Valid Due Process Claims**

Plaintiffs acknowledge that their Fifth Amendment claims apply only to federal

actors. They seek to amend their complaint to clarify that their due process claims arise under the Fourteenth Amendment, which applies to state actors such as the Defendants. Plaintiffs have identified constitutionally protected property interests in their home and financial assets subject to the Foreclosure Action. The fundamental requirement of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985).

Defendants deprived Plaintiffs of this opportunity by denying Plaintiffs the opportunity to present critical evidence as detailed in Plaintiffs' submission to the pre-hearing statement (Exhibit 5). These actions violated Plaintiffs' procedural due process rights under the Fourteenth Amendment.

The Supreme Court has recognized that "a fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). When a judge has a direct personal or financial interest in the outcome of a case, due process requires recusal. The specific financial relationships between Judge Bunnell and Central Bank detailed in Exhibit 6 create precisely the kind of "direct, personal, substantial, pecuniary interest" that necessitates recusal under *Tumey v. Ohio*, 273 U.S. 510, 523 (1927).

Furthermore, the Supreme Court has recognized that due process may require recusal even when no specific bias can be proven, if "the probability of actual bias on the part of the judge... is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The circumstances alleged here—including ex parte communications

and financial relationships with a party—create exactly such an intolerable risk of bias.

Specific due process violations include:

a) Judge Bunnell refused to consider Plaintiffs' properly filed motion for reconsideration on April 26, 2024, ruling without allowing Plaintiffs an opportunity to be heard;

b) Judge Bunnell's August 19, 2024 order compelling Plaintiffs to appear for judgment debtor examinations was issued without proper notice or hearing, in violation of Kentucky Rules of Civil Procedure 69.02.

Furthermore, due process requires an unbiased tribunal. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009). Plaintiffs have alleged bias and conflict of interest that rendered the proceedings constitutionally inadequate. This is evidenced by Judge Caldwell's eventual recusal (Exhibit 4) and the counter-claims detailed in the Plaintiffs' pre-hearing statement (Exhibit 5), which demonstrate disparate treatment compared to similarly situated litigants.

### 2. The Complaint States Valid Equal Protection Claims

Plaintiffs have stated a valid "class of one" equal protection claim under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), by alleging that they were treated differently from similarly situated individuals without any rational basis for the distinction. Specifically, as documented in the adversary proceeding (Exhibit 6) and

notice of objection to claim (Exhibit 7), opposing parties were granted procedural leniency denied to Plaintiffs, and different evidentiary standards were applied to similar situations.

To succeed on a "class of one" equal protection claim, Plaintiffs must show that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Sixth Circuit has further clarified that plaintiffs must demonstrate that they were treated differently from others who were "similarly situated in all relevant respects." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864-65 (6th Cir. 2012).

The specific instances of disparate treatment described above involve situations where Plaintiffs and Central Bank were similarly situated in all relevant respects—both were parties to the same litigation, subject to the same procedural rules, and presenting similar types of evidence and motions. Yet Judge Bunnell consistently ruled in favor of Central Bank while denying Plaintiffs comparable procedural opportunities, creating a clear pattern of intentional discrimination without any rational basis.

Specific examples of disparate treatment include:

    a)  On January 20, 2021, Judge Bunnell granted Central Bank's motion for summary judgment despite Central Bank's failure to authenticate

key documents, while on March 7, 2024, denying Plaintiffs' similar motion that included properly authenticated evidence;

b) Judge Bunnell routinely granted Central Bank's requests for extensions of time to respond to Plaintiffs' motions, but denied Plaintiffs' requests for similar extensions on at least three occasions (April 30, 2024, June 17, 2024, and October 18, 2024);

c) Judge Bunnell held Plaintiffs to strict compliance with procedural rules while overlooking Central Bank's procedural deficiencies, such as accepting Central Bank's untimely response to Plaintiffs' counterclaims on February 5, 2025, while rejecting Plaintiffs' motion filed one day late on June 17, 2024.

These specific examples demonstrate that Plaintiffs were intentionally treated differently from similarly situated litigants without any rational basis for the distinction, satisfying the requirements for a "class of one" equal protection claim.

### 3. Plaintiffs' Request For Leave To Amend

To address any perceived deficiencies in the Complaint, Plaintiffs respectfully request leave to amend. Rule 15(a)(2) provides that courts "should freely give leave when justice so requires." This liberal amendment policy serves the interest of resolving disputes on their merits rather than on pleading technicalities. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs' proposed amended complaint would include additional factual allegations regarding:

- Specific instances of biased treatment with dates and details

- Procedural irregularities that violated due process

- Comparable cases showing disparate treatment

- Clarification that due process claims arise under the Fourteenth Amendment

- Specification that Defendants are sued in both official and individual capacities

**F. Service Of Process On Judge Caldwell Has Been Properly Effected**

Contrary to Defendants' assertions in footnote 10 of their Memorandum, Judge Caldwell has been properly served in accordance with Federal Rule of Civil Procedure 4. On March 10, 2025, Plaintiffs effected service on Judge Caldwell through personal delivery of the summons and complaint to her chambers by a process server, in compliance with this Court's Order to Show Cause dated February 27, 2025.

The process server's affidavit confirming completed service was filed with this Court on March 12, 2025. Therefore, Defendants' assertion that Judge Caldwell has never been served is factually incorrect and should not serve as a basis for dismissal under Fed. R. Civ. P. 12(b)(5).

**G. Standard for Granting Leave to Amend**

The Federal Rules of Civil Procedure embody a liberal policy favoring

amendments. As the Supreme Court noted in *Foman v. Davis*, 371 U.S. 178, 182 (1962), "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." The Sixth Circuit has consistently held that a court should grant leave to amend absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).

None of these factors that would justify denying leave to amend are present here. This is Plaintiffs' first request to amend, made promptly in response to Defendants' motion to dismiss, and the proposed amendments would cure any perceived deficiencies in the original complaint. Therefore, if the Court finds any deficiency in the Complaint, Plaintiffs respectfully request leave to amend rather than dismissal.

### H. Plaintiffs' Request For Injunctive Relief Is Not Moot

While the Bankruptcy Proceeding has temporarily stayed the debtor examination, this does not render Plaintiffs' request for injunctive relief moot. The bankruptcy stay is temporary, and the constitutional violations will continue once it is lifted. This situation falls within the "capable of repetition yet evading review" exception to mootness. *Spencer v. Kemna*, 523 U.S. 1, 17 (1998).

Moreover, the bankruptcy stay affects only certain aspects of the state court

proceedings; constitutional violations may continue to occur in proceedings not subject to the stay. Several appeals and petitions remain active despite the bankruptcy stay, including Appeal I, Appeal V, and Petition III, all of which continue to be affected by the constitutional violations alleged in the Complaint.

Finally, Plaintiffs' claims for monetary damages remain live regardless of the status of the injunctive relief. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 8-9 (1978) (claim for damages saves case from mootness even if injunctive relief becomes moot). Therefore, Plaintiffs' claims are not moot and should not be dismissed on this basis.

## I. Judge Bunnell's Continued Standing in This Case

There is also the issue of Judge Bunnell's continued standing in this case. The Plaintiffs have filed three motions for recusal which included allegations of conflict of interest, bias, and prejudice, but Judge Bunnell denied all three of them. When Judge Bunnell was served with this action, she did not recuse herself as Judge Caldwell had immediately done.

Instead, Judge Bunnell appears to have retaliated against the Plaintiffs in the counter-claim portion of this case by dismissing it immediately. This counter-claim case is not part of this § 1983 action. It took place after this filing but may be relevant to this case as evidence of continued constitutional violations. Judge Bunnell remains the judge with jurisdiction in the Foreclosure Action, which is now in its seventh year.

Plaintiffs note a significant and troubling inconsistency in Judge Bunnell's legal positions regarding standing. In her February 5, 2025 Order in case number 19-CI-00812, Judge Bunnell dismissed all of Plaintiffs' counterclaims against Central Bank & Trust. One of the grounds Judge Bunnell cites was that Plaintiffs "lack standing to pursue their counterclaims," due to their Chapter 13 bankruptcy filing on October 30, 2024.

Yet, paradoxically, in the present case before this Court, Judge Bunnell has reversed her position entirely, raising no objection to Plaintiffs' standing despite the identical Chapter 13 bankruptcy status that she previously deemed dispositive. This inconsistent application of standing doctrine—finding that Plaintiffs lack standing when it benefits Central Bank while simultaneously asserting they maintain standing when it serves her defensive interests—further demonstrates the pattern of disparate treatment and judicial impropriety that forms the basis of Plaintiffs' constitutional claims.

This contradictory legal position on a fundamental jurisdictional question is not merely a technical discrepancy but represents precisely the type of arbitrary and unequal application of law that violates Plaintiffs' constitutional rights to due process and equal protection. Such inconsistency reinforces Plaintiffs' claims that Judge Bunnell's rulings have been driven by improper bias rather than neutral application of legal principles.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' Motion to Dismiss in its entirety. Alternatively, Plaintiffs request leave to amend their Complaint to address any deficiencies identified by the Court.

## V.   EXHIBITS

The following Exhibits are included with this filing:

Exhibit 1 – U.S.D.C. E.D.K.Y., Order to Show Cause, Case No. 5:24-cv-00305-GFVT (1 page), February 27, 2025

Exhibit 2 – Plaintiffs' Response to Court's Order to Show Cause, Case No. 5:24-cv-00305-GFVT (6 pages), March 10, 2025

Exhibit 3 – Wains Correspondence with Dentons Bingham Greenbaum LLP, 2019-2020 (8 pages)

Exhibit 4 – Kentucky Court of Appeals, Judge Jacqueline M. Caldwell's Notice of Reassignment-Recuse, Kentucky Court of Appeals Case No. 2024-CA-1090-OA (1 page), February 5, 2025

Exhibit 5 – Plaintiffs' Pre-hearing Statement, Kentucky Court of Appeals, Case No. 2025-CA-0252-MR (8 pages), March 13, 2025

Exhibit 6 – Wain v. Central Bank & Trust Co., Adversary Proceeding Case No. 1:25-ap-01026-MB (25 pages), Filed April 24, 2025

Exhibit 7 – Wain v. CBT, Notice of Objection to Claim, Case No. 1:24-bk-11814-MB (39 pages), Filed April 27, 2025

Respectfully submitted, May 7, 2025

*Douglas A. Wain, Pro Se*
*Plaintiffs*
*P. O. Box 7473*
*Westlake Village, CA 91359*
*douglaswain@gmail.com*
*859.494.3677*

*Elisa Wain, Pro Se*
*Plaintiffs*
*P. O. Box 7473*
*Westlake Village, CA 91359*
*douglaswain@gmail.com*
*859.494.3677*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing was duly served by email or mail on this 7th day of May 2025:

Melissa Norman Bork (KY #85448)
Dentons Bingham Greenbaum LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
(502) 589-4200
melissa.normanbork@dentons.com
*Counsel for Defendants*

Respectfully submitted, May 7, 2025

*Douglas A. Wain, Pro Se*
*Plaintiffs*
*P. O. Box 7473*
*Westlake Village, CA 91359*
*douglaswain@gmail.com*
*859.494.3677*

*Elisa Wain, Pro Se*
*Plaintiffs*
*P. O. Box 7473*
*Westlake Village, CA 91359*
*douglaswain@gmail.com*
*859.494.3677*